WILLIAM RUTHERFORD, APPELLEE, v. CHIEF INDUSTRIES, INC., A CORPORATION, APPELLANT.

223 N. W. 2d 838

Filed December 12, 1974. No. 39512.

Luebs, Tracy, Dowding, Beltzer & Leininger, for appellant.

Cronin, Shamberg & Wolf, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is an action by the plaintiff to recover from the defendant, Chief Industries, Inc., plaintiff's former employer and a manufacturer of mobile homes, compensation for services rendered as the defendant's district sales manager. The question involved in the lower court was whether the plaintiff, whose compensation was determined "on a Commission basis of 1% of the gross selling price of all units shipped into his territory," was entitled to commission after his employment

was involuntarily terminated by his employer for units sold before the termination but delivered thereafter. The question of the right to recovery was submitted to the jury which found for the plaintiff. The defendant, after its motion for new trial was overruled, perfected its appeal. It assigns as error: (1) The refusal of the trial court to direct a verdict in its favor. (2) The giving of instruction No. 2. (3) The refusal to give defendant's requested instruction No. 1 which was as follows: "The interpretation given a contract by the parties themselves while engaged in their performance of it is one of the best indications of their true intent and should be given great weight (influence)." The last assignment raises the principal question on appeal and we deal with it first.

There is little conflict in the evidence. It consisted of a written stipulation of facts, which was supplemented by the testimony of the plaintiff in his own behalf, and that of his immediate superior, Joel Gooch, Chief Industries' sales manager, on behalf of the defendant, and two memoranda issued by the latter during the plaintiff's employment. There was some other documentary evidence but it is unnecessary that we take note of it.

The plaintiff was hired on April 27, 1970, and was at that time paid a weekly salary. The Chief Industries' mobile home division was not then in production as the factory at Aurora, Nebraska, was still being prepared for the manufacturing process. The first units were produced in the latter part of June 1970. On June 10, 1970, Gooch advised his superiors by memorandum that the plaintiff's method of compensation was being changed. This memorandum was in part as follows: "Bill Rutherford is presently on Salary which will cease on July 1, 1970. Effective that date, he will go on a Commission basis of 1% of the gross selling price of all units shipped into his territory up to $3

million in gross sales. For everything over $3 million, he will be paid at the rate of 1-½% commission.

"His territory will consist of the states of Minnesota, Iowa, Missouri, Kansas, and the portion of Nebraska East of Highway 81.

"Effective July 1, 1970, he will begin receiving $200.00 plus reimbursement of his expenses which will be deducted from his monthly commission settlement. We have established a goal of 50 dealers with three units of inventory as a standard in this territory." Thereafter the plaintiff was paid on the 10th of each month a commission on all units delivered into his territory during the preceding month. Advancements were made to him during the month and these were deducted from the commission when paid. For the month of July 1970 he was credited with commissions of $424.58, which was less than his expense and advancements received for the month of July; thereafter, he received or was credited with commissions each month which, up to the date of his discharge on July 22, 1971, totaled $20,895.56. On the latter date there were 68 units on order for delivery in plaintiff's zone; these units were all delivered to dealers after termination of his employment and before September 1, 1971. The gross selling price of the units was $384,783. It is commission on these units which is the subject of the action.

The plaintiff, in his petition, pled essentially the facts recited in the preceding paragraph and prayed for judgment in the amount of $3,847.83. The defendant's answer admitted the employment, the basis of compensation as set forth in the memorandum previously mentioned, and by general denial made the issue of whether any amount was owed.

The evidence shows that, in addition to developing and procuring sales, plaintiff also performed other duties such as getting sales confirmed, and assisting dealers in arranging floor planning, collections, and handling

service complaints. The evidence would permit a jury to find that these latter duties were not exclusively his, but were shared with others who performed them in his absence. The evidence would also permit the jury to find that, although the duties were shared, the ultimate responsibility in these respects was his. The evidence shows that the manufacture of units was not begun until confirmed orders had been received. It is the defendant's position that, because the plaintiff received for the month of July 1970, commissions on units manufactured in June 1970, a time when the plaintiff was still being paid a salary, the parties themselves have in effect construed the contract of employment to mean that no commission would be paid on units, orders for which were confirmed prior to the plaintiff's discharge but delivered later. It is on this basis that the defendant claims it was entitled to the requested instruction.

As to the 68 units on order when the plaintiff's employment was terminated, the evidence shows that the sales contracts had, at that time, been confirmed and the units "released for production," and that floor planning had been arranged.

In support of its position that it was entitled to the requested instruction, the defendant relies upon the principles we most recently stated in Knight Bros., Inc. v. State, 189 Neb. 64, 199 N. W. 2d 720, as follows: "When a contract is ambiguous, the court must determine the parties' intent and an ambiguity must be resolved so as to give effect to that intent.

"The interpretation given a contract by the parties themselves while engaged in their performance of it is one of the best indications of their true intent and should be given great, if not controlling, influence, and the court should ordinarily enforce such construction.

"Where evidence relating to ambiguities and contradictory provisions in a written contract is conflict-

ing, the interpretation to be given the contract is for the jury."

In the case at hand, the memorandum itself was not a complete contract. It did not purport to cover all the terms of the employment. In particular, it did not cover the matter of compensation for services rendered in the form of sales procured previous to termination but which were delivered afterward. As we view it, the circumstances and conditions under which the method of compensation was changed from salary to commission were not a practical construction of the terms of employment as they might relate to compensation on termination. That particular situation had not previously occurred. By its nature it could not, unless there had been a termination and a later rehiring. The circumstance of the change of method of compensation afforded, at most, merely a basis for argument by way of analogy as to how compensation on termination was to be handled. All the facts which supported such an argument were before the jury, including some which were wholly unrelated acts of defendant following termination of plaintiff's employment. In James Poultry Co. v. City of Nebraska City, 135 Neb. 787, 284 N. W. 273, we discussed the matter of the practical construction of a contract by the parties and said: " '. . . The mere opinion of the parties as to the construction of the contract, not carried into effect by any act, will not amount to a practical construction.' " The evidence in this case did not support *a practical construction by the parties* of an ambiguous or contradictory provision of the contract and the defendant was not entitled to the requested instruction.

The defendant assigns as error the failure of the trial court to grant its motion for a directed verdict. At the close of the plaintiff's case the defendant moved for a directed verdict. The motion was denied. At the close of all the evidence, the defendant renewed its

motion for a directed verdict and, then, after some discussion with the court and counsel for the plaintiff, withdrew that motion. The withdrawal of the motion prevents us from considering its merits for by defendant's election to withdraw it, it has consented to have the jury consider the issues.

The defendant objected to instruction No. 2. That instruction was in part as follows: "In defense to plaintiff's claim, defendant alleges that plaintiff has been paid all moneys due and owing to him under the fair, just and reasonable interpretation of the contract. Plaintiff denies that he has been paid all money due him." No more specific instruction was requested. The only issue raised by the defendant's answer was whether the money claimed was owed. In the absence of some more specific instruction to which he might have been entitled and under the evidence and the issues made by the pleadings, the instruction was not erroneous.

AFFIRMED.